IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEYSHERA KIRK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:25-CV-0066-D |
| | § | |
| OUR COMMUNITY OUR KIDS | § | |
| and ACH CHILD AND FAMILY | § | |
| SERVICES, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Keyshera Kirk ("Kirk") alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e2(a)(1), 42 U.S.C. § 1981, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. 2601 *et seq.*, defendant ACH Child and Family Services ("ACH") moves to dismiss Kirk's claims and to transfer the case to the Forth Worth Division of the Northern District of Texas. For the reasons that follow, the court denies the motion to transfer, grants the motion to dismiss, and grants Kirk leave to replead.

I

Kirk, an African American woman, began working as a Permanency Specialist for Our Community Our Kids ("OCOK"), a division of ACH Child and Family Services

("ACH"), on February 21, 2020.[1]  Kirk alleges that, in the latter part of 2021, there was a "shift in the environment at OCOK," which became more noticeable after Stacy Reynolds ("Reynolds") took over as Senior Permanency Director.  According to Kirk's complaint, the "work environment became increasingly toxic and hostile," and "[t]here was a clear display of disparate treatment and unfair practices relating to African American employees."

Kirk alleges that she and her predominantly African American unit were required to take on case transfers from predominantly white supervisors who reported workload issues, which caused her unit to exceed caseload capacity.  She also asserts that, when Kris Naylor ("Naylor") became acting Senior Director of Permanency, "instances of micro-aggressions and biases were noted, such as questioning African American workers' intentions and promoting individuals with personal ties to leadership."  Compl. (ECF No. 1) ¶ 21.  Kirk raised concerns about the mistreatment of staff members to Human Resources in April 2022, and Human Resources Specialist Jessica Grady ("Grady") confirmed that others had complained about leadership.

During a leadership training session in June 2022, while Kirk was attempting to discuss Reynolds' harsh communication style, Permanency Director Suzanne Hinkle ("Hinkle") loudly and publicly interrupted her by saying "[d]o you want to take it to the

---

[1]The court recounts the background facts favorably to Kirk as the nonmovant.  In deciding a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)).

streets?"  Compl. (ECF No. 1) ¶ 23.  Reynolds failed to intervene during this incident of public hostility.  Kirk alleges that the close relationship between Reynolds and Hinkle, both of whom are white, "created discord and a hostile work environment."  Compl. (ECF No. 1) ¶ 26.  Kirk was also required to be on call for days without any down time, which impacted her ability to sleep and take prescribed medication.

As a result of the allegedly hostile workplace, Kirk found herself constantly worrying about potential conflicts, feeling on edge, and experiencing stress, anxiety, panic attacks, and burnout, as well as headaches, muscle tension, irritability, and difficulty concentrating. Consequently, she requested FMLA leave for mental health reasons.[2]  In early March 2023, Kirk's doctor signed a fitness-for-duty certification requesting an accommodation restricting contact with Kirk between 8 p.m. and 5 a.m. through December 31, 2023.[3]  Kirk alleges that this requested accommodation was reasonable because OCOK had an on-call unit responsible for accepting after-hours calls.  Kirk's request for accommodation was denied, which "had a significant impact on Ms. Kirk, limiting her ability to make plans after 5:00 p.m. and adhere to prescribed medication schedules."  Compl. (ECF No. 1) ¶ 36.  After her accommodation request was rejected, Kirk was terminated from her position.[4]  Compl. (ECF No. 1) ¶ 37.

_____

[2]Kirk does not allege the date that she requested FMLA leave.

[3]Kirk does not clearly allege the date on which the certification requesting the accommodation was submitted.  She alleges that she was "released to return to work on March 6, 2023," P. Compl. (ECF No. 1) ¶ 33, but that she requested the accommodation on March 3, 2023, P. Compl. (ECF No. 1) ¶ 34.

[4]Kirk does not allege the date that she was terminated.

ACH now moves to transfer this case to the Fort Worth Division of this court and to dismiss Kirk's complaint for failure to state a claim on which relief can be granted. The court is deciding the motions on the briefs, without oral argument.

II

The court first addresses ACH's motion to transfer.

A

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 811 (N.D. Tex. 2002) (Fitzwater, J.) (citing *Stabler v. N.Y. Times Co.*, 569 F. Supp. 1131, 1137 (S.D. Tex. 1983)). "The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other." *Sivertson v. Clinton*, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (citing *Fowler v. Broussard*, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.)).

As a preliminary question, the court must decide "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004) (per curiam). Once the court resolves this issue, "the determination of 'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." *Id.* (citing

- 4 -

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)).

The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

The moving party bears "the burden of proving by a preponderance of the evidence that transfer is appropriate." *Bank One, N.A.*, 211 F.Supp.2d at 812 (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)). "Where there is no demonstration by the movant, let alone a clear one, the [district] court cannot weigh a factor against the non-movant and in favor of transfer." *Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022).

> Moreover
>
> [t]he plaintiff's choice of venue is . . . entitled to deference, and therefore the party seeking transfer has the burden to show good cause for the transfer. The burden on the movant is "significant," and for a transfer to be granted, the transferee venue must be "clearly more convenient than the venue chosen by the plaintiff."

*AT & T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, 2009 WL 774350, at *1 (N.D. Tex.

Mar. 24, 2009) (Lynn, J.) (footnotes omitted) (quoting *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008) (en banc)).

B

The court turns first to the preliminary question of whether this case could have been filed in the Fort Worth Division of this court. Because the actions that allegedly violated Title VII, § 1981, the ADA, and the FMLA are alleged to have taken place in the Fort Worth Division, venue is proper in that division and therefore the case could have been filed there. *See* 42 U.S.C. § 2000e-5(f)(3); 28 U.S.C. § 1391(b).

C

The court next considers the private interest factors.

The parties agree that the factors of availability of compulsory process to secure the attendance of witnesses, cost of attendance for willing witnesses,[5] and other practical problems are neutral. As for the ease of access to proof, ACH maintains that "[a]ll of the tangible evidence relevant to this case is located in the Fort Worth Division," including relevant files, personnel policies and procedures, and Kirk's personnel records and documentation regarding Kirk's termination. P. Br. (ECF No. 13) at 6. But considerations

---

[5]"The availability and convenience of witnesses has been held to be the most significant factor in deciding a § 1404(a) motion to transfer." *Sw. Airlines Co. Profit Sharing 401(k) Comm. v. UBS Global Asset Mgmt. (Ams.), Inc.*, 2007 WL 268808, at *3 (N.D. Tex. Jan. 29, 2007) (Fitzwater, J.) (quoting *Mannatech, Inc. v. K.Y.C., Inc.*, 2006 WL 2216033, at *3 (N.D. Tex. Aug. 3, 2006) (Solis, J.)). The convenience of non-party witnesses is accorded the greatest weight, whereas the convenience of witnesses employed by the party seeking transfer is entitled to less weight. *See Moss v. Lockheed Martin Corp.*, 2011 WL 197624, at *5 (N.D. Tex. Jan. 18, 2011) (Lynn, J.).

of accessibility and location of sources of proof are "less influential due to advances in copying technology and information storage." *Sargent v. Sun Tr. Bank, N.A.*, 2004 WL 1630081, at \*4 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (citing *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 778 (E.D. Tex. 2000)).  Moreover, there is no indication that the tangible evidence that ACH identifies is so voluminous that it cannot be transported from Fort Worth to Dallas without great difficulty, or that the parties cannot easily access electronic versions of relevant documents that are physically located in Fort Worth.  This factor therefore weighs only slightly in favor of transfer.

### D

The court next addresses the public interest factors.  The parties agree that the factors of administrative difficulties flowing from court congestion, familiarity of the forum with the law that will govern the case, and avoidance of unnecessary problems of conflict of law of the application of foreign law are all neutral.  On the issue of the local interest in having localized issues decided at home, ACH maintains that the Fort Worth Division has an interest in deciding this case because Kirk complains of wrongdoing occurring during her employment with ACH in the Fort Worth Division, and every individual accused of wrongdoing was working in the Fort Worth Division.  Kirk maintains that, because she is a Dallas resident, the Dallas Division has a localized interest in deciding issues pertaining to potential discrimination against one of its residents.  Because both divisions have a local interest in this dispute, this factor is neutral.  *See, e.g.*, *Seeberger Enters., Inc. v. Mike Thompson Recreational Vehicles, Inc.*, 502 F.Supp.2d 531, 541 (W.D. Tex. 2007) ("[T]he

- 7 -

Court finds that both California and Texas have an interest in the resolution of claims involving local residents and businesses."); *Ramirez v. Plains All Am. GP, LLC*, 2022 WL 607879, at *7 (W.D. Tex. Mar. 1, 2022) (finding the local interest factor neutral when, "[w]hile the citizens in the Midland Division have an interest in ensuring their businesses do not discriminate against their employees on prohibited grounds, simultaneously the citizens of the Pecos Division possess a contradistinctive interest in preventing discrimination against their residents by Midland- or Houston-based businesses").

E

ACH has shown that one private interest factor—the ease of access to proof— slightly weighs in favor of transfer, and that the remaining private and public interest factors are neutral. ACH has not carried its burden to show that the Fort Worth Division is a "clearly more convenient venue" than the Dallas Division. To transfer the case to the Fort Worth Division from the Dallas Division, in which Kirk resides and chose to file her suit, would merely shift the inconvenience of the venue from ACH to Kirk. The court therefore denies ACH's motion to transfer the case to the Fort Worth Division.

III

The court next turns to ACH's motion to dismiss for failure to state a claim on which relief can be granted.

A

"In deciding a [Fed R. Civ. P.] 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true,

- 8 -

viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (brackets omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

B

ACH maintains that Kirk's Title VII and § 1981 race discrimination claims should be dismissed because Kirk has not alleged facts demonstrating that other similarly situated employees outside of her protected group were treated less favorably.  Kirk contends that she has plausibly pleaded each element of these claims.

1

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). Section 1981 guarantees to "[a]ll persons within the jurisdiction of the United States . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). It defines the phrase "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). When a plaintiff alleges a Title VII or § 1981 claim of race discrimination[6] based on circumstantial evidence, as Kirk does, the court can use the *McDonnell Douglas* framework as a reference when determining whether the plaintiff has plausibly alleged the ultimate elements of her claim.[7] Under this framework, a plaintiff must

_____

[6]"Courts use the same legal framework to analyze claims brought under Title VII and § 1981." *Fisher v. Dallas Cnty.*, 2014 WL 4797006, at *3 (N.D. Tex. Sept. 26, 2014) (Fitzwater, C.J.) (citing *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007)). "Title VII and [§] 1981 require the same proof to establish liability." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999) (citing *Bunch v. Bullard*, 795 F.2d 384, 387 n.1 (5th Cir. 1986)).

[7]The familiar *McDonnell Douglas* standard for evaluating employment discrimination claims is an evidentiary framework, not a pleading standard. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Accordingly, "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz*, 534 U.S. at 510-12); *see also Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam) ("Although Chhim did not have to submit evidence to establish a prima facie case of discrimination at this stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible."). To survive ACH's motion to dismiss, however, Kirk must plausibly plead the ultimate elements of her Title VII claims. *See Chhim*, 836 F.3d at 470. And since *McDonnell Douglas* will govern when a

sufficiently plead that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) others similarly situated but outside her protected class were treated more favorably.  *See, e.g.*, *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997-98 (5th Cir. 2022).

2

Kirk maintains that she has plausibly alleged her race discrimination claim because the complaint details specific comparators who were treated more favorably, and she identifies Julie O'Brien ("O'Brien") as an example.  O'Brien is identified in the complaint as a white supervisor who "transferred cases to Ms. Kirk's unit with little oversight or question, causing her unit to exceed caseload capacity."  Compl. (ECF No. 1) ¶ 18.  There does not appear to be an allegation that O'Brien was treated any differently than Kirk—instead, the complaint alleges only that she transferred cases to Kirk's unit.  Although Kirk asserts that her unit was predominantly African American and that it was required to take case transfers from other units, there is no allegation that other units were not similarly required to take transferred cases.  Nor are there any facts alleged concerning what O'Brien's role was, other than that of "supervisor," that would enable the court to draw the reasonable

---

plaintiff relies on indirect evidence of discrimination, it can be helpful to reference that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of her claim.  *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (Title VII case) ("If a plaintiff's . . . claim depends on circumstantial evidence, he will 'ultimately have to show' that he can satisfy the *McDonnell Douglas* framework.  In such cases, we have said that it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the . . . claim."  (quoting *Chhim*, 836 F.3d at 470-71)).

inference that O'Brien was similarly situated. *See Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021) (affirming dismissal of claim when there was no allegation that any individual outside the protected group "with a similar job and supervisor and who engaged in the same conduct . . . received more favorable treatment"). Kirk has not alleged sufficient factual content that, taken as true, would enable the court to draw the reasonable inference that she was treated less favorably than similarly situated individuals outside her protected group. Accordingly, the court dismisses Kirk's Title VII and § 1981 race discrimination claims.

C

ACH also maintains that Kirk's hostile work environment claim should be dismissed because she offers nothing more than general, conclusory statements in support of these claims. Kirk contends that she has plausibly alleged the elements of a hostile work environment claim.

1

"A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). Generally, to establish a prima facie case of a hostile work environment based on race, a plaintiff must show the following:

- 12 -

> (1) she belongs to a protected group; (2) she was subjected to
> unwelcome harassment; (3) the harassment complained of was
> based on race; (4) the harassment complained of affected a term,
> condition, or privilege of employment; [and] (5) the employer
> knew or should have known of the harassment in question and
> failed to take prompt remedial action.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). "Harassment is based on race if 'the complained-of conduct had a racial character or purpose.'" *King v. Enter. Leasing Co. of DFW*, 2007 WL 2005541, at *10 (N.D. Tex. July 11, 2007) (Fitzwater, J.) (quoting *Harris-Childs v. Medco Health Sols., Inc.*, 2005 WL 562720, at *6 (N.D. Tex. Mar. 10, 2005) (Means, J.)). A plaintiff must demonstrate a "connection between the allegedly harassing incidents and [her] protected status." *Id.* (alteration in original) (citation omitted). "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ramsey*, 286 F.3d at 268 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

2

Kirk has alleged no facts to support her conclusory allegation that she was subjected to harassment based on race. She pleads that, under Naylor, the Senior Director of Permanency, "instances of micro-aggressions and bias were noted, such as questioning African American workers' intentions and promoting individuals with personal ties to leadership," Compl. (ECF No. 1) ¶ 21, and that Kirk "experienced public hostility" from Hinkle, Compl. ¶ 23. But Kirk pleads no examples or makes other factual allegations to

- 13 -

support the conclusory assertion that there were any micro-aggressions or other race-based harassment. This allegation is therefore insufficient to plead a plausible claim for discrimination. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (citations omitted)). As for Kirk's allegation regarding the hostility from Hinkle, there is no indication in the complaint that this hostility was based on race. Because Kirk has not alleged facts that, taken as true, would enable the court to draw th reasonable inference that there was any harassment or that any alleged harassment was based on Kirk's race, she has failed to allege a plausible hostile work environment claim. The court therefore dismisses this claim.

D

ACH contends that Kirk's retaliation claims should be dismissed because she does not adequately allege protected conduct or a causal connection between the alleged protected conduct and any adverse employment action. Kirk maintains that she plausibly alleged protected conduct followed by her placement on unpaid leave and her eventual termination, and that this is sufficient to plausibly allege her retaliation claims.

1

To state a claim for retaliation under Title VII or § 1981, Kirk must allege sufficient factual content that, if true, would show "(i) [s]he engaged in a protected activity; (ii) an adverse employment action occurred; and (iii) a causal link exists between the protected

activity and the adverse employment action." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 436-37 (5th Cir. 2022). An employee engages in protected activity when she "oppose[s] any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). "[C]ases that accept mere temporal proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citation omitted).

2

Kirk maintains that she engaged in protected conduct when she reported workplace discrimination to Human Resources and that this was followed closely by adverse actions, including unpaid leave and her eventual termination. In her complaint, however, Kirk alleges only that she raised concerns about "the ill treatment of staff members" to Human Resources in April 2022, Compl. (ECF No. 1) ¶ 22, and that during a later Human Resources meeting at an unspecified time after an incident in June 2022, she discussed how another Permanency Director's loud, public suggestion that they take their conflict to the streets "made her feel afraid, attacked, and marginalized, as the tenor of the comment was aggressive and improper within the workplace." Compl. (ECF No. 1) ¶ 24. Kirk has not plausibly alleged that either of these complaints to Human Resources was protected conduct because she does not plausibly allege that either complaint had to do with alleged mistreatment based on race. Complaints about management, without suggesting that the mistreatment was discriminatory and based on a protected status, in violation of Title VII, or providing some factual allegation to support this conclusion, is not sufficient to plausibly allege protected action for retaliation

- 15 -

purposes. *See, e.g.*, *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007) (holding that a complaint with no reference to conduct that could be considered a discriminatory employment practice cannot give rise to protected activity).

As for Kirk's allegation that she complained to Human Resources in April 2023 expressing "frustration over . . . discriminatory practices," this vague assertion does not include sufficient factual support to give rise to a reasonable inference that Kirk engaged in protected activity. Moreover, even assuming *arguendo* that this was sufficient to allege protected activity, Kirk has pleaded no facts supporting a causal connection between her complaint and any adverse employment action.[8] Kirk has therefore failed to state a claim for relief based on retaliation under Title VII or Section 1981, and the court dismisses these claims.

E

ACH maintains that Kirk's ADA claim should be dismissed because she does not allege that she had a disability under the ADA or that she was terminated on account of her disability, nor does she allege facts to plausibly allege the elements of a failure to accommodate claim. Kirk contends that she has alleged a disability under the ADA, that ACH was aware of her disability, and that ACH failed to provide the reasonable accommodation that she requested.

---

[8]Kirk does not allege when she was terminated. She therefore has not plausibly pleaded that any temporal proximity between her complaints and her termination would give rise to an inference of a causal connection.

1

The ADA prohibits discrimination in employment against a qualified individual on the basis of her disability. *See* 42 U.S.C. § 12112(a). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities[,]" including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working[,]" and "the operation of a major bodily function, including but not limited to, functions of the . . . brain[.]" 42 U.S.C. § 12102(1)-(2). Furthermore, the ADA dictates that the definition of disability for purposes of the ADA "shall be construed in favor of broad coverage of individuals[.]" 42 U.S.C. § 12102(4)(A).

Discrimination on the basis of disability for purposes of the ADA may mean either disparate treatment on the basis of a disability, or "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). To plausibly allege an ADA disability discrimination claim based on disparate treatment, Kirk must allege sufficient facts to show "(1) she is disabled within the meaning of the ADA, (2) she was qualified for the job, and (3) she was fired on account of her disability." *Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 526 (5th Cir. 2022). To plausibly allege an ADA failure-to-accommodate claim, she must allege sufficient facts

to show that: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. La., Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (footnote and internal quotation marks omitted).

2

As an initial matter, the court must determine whether Kirk has plausibly pleaded a disability under the ADA.  Kirk alleges that she "found herself constantly worrying about potential conflicts, feeling on edge, and experiencing panic attacks in response to work-related stressors" and that her workplace conditions "contributed to [her] stress, anxiety, and burnout, which manifested physically as well as emotionally" and that she "began to experience headaches, muscle tension, irritability, and difficulty concentrating." Compl. (ECF No. 1) ¶ 29.  She has not, however, alleged that these symptoms limited her ability to perform one or more major life activities.  *See, e.g.*, *Hale v. King*, 642 F.3d 492, 500-01 (5th Cir. 2011) (holding that plaintiff failed to state a claim under the ADA when he had not alleged the impact of his medical issues on his ability to perform major life activities); *Mora v. Univ. of Tex. Sw. Med. Ctr.*, 469 Fed. Appx. 295, 297 (5th Cir. 2012) (per curiam) (holding that plaintiff failed to state a claim under the ADA when she alleged a disability and stated that it impaired a major life activity, but did not specify which of her life activities was substantially limited); *Milteer v. Navarro Cnty., Tex.*, 2022 WL 1321555, at *7 (N.D. Tex. May 3, 2022) (Fitzwater, J.) (holding that plaintiff failed to state an ADA

claim because he failed to allege that his conditions substantially limited him in the performance of a major life activity), *rev'd on other grounds*, 99 F.4th 268 (5th Cir. 2024). Because she has not alleged that she is disabled within the meaning of the ADA, Kirk has failed to state a claim for disparate treatment based on her disability or for failure to accommodate her disability. Accordingly, the court dismisses Kirk's ADA claims.

F

ACH maintains that Kirk's FMLA claim should be dismissed because she has not adequately alleged a causal connection between her FMLA leave and her termination. Kirk contends that her allegation that the temporal proximity between her FMLA leave and termination supports an inference of causation.

1

The FMLA makes it unlawful for an employer to discharge or retaliate in any other manner against an individual for opposing the employer's unlawful FMLA practices. *See* 29 U.S.C. § 2615(a)(2). To prevail on an FMLA retaliation claim, Kirk must allege facts that, taken as true, show that (1) she engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *See Miller v. Metrocare Servs.*, 2015 WL 477233, at *5 (N.D. Tex. Feb. 5, 2015) (Fitzwater, J.), *aff'd*, 809 F.3d 827 (5th Cir. 2016).

2

Kirk alleges that she took FMLA leave and that she "suffered an adverse employment decision because she took FMLA leave." Compl. (ECF No. 1) ¶ 58. She pleads no facts,

- 19 -

however, to support the allegation that any adverse employment action taken against her was because she took FMLA leave.[9]  Kirk has therefore failed to plausibly allege the elements of her claim, and the court dismisses her FMLA claim.[10]

IV

Although the court is granting ACH's motion to dismiss, it will permit Kirk to replead.  *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002))).  There is no indication that Kirk cannot, or is unwilling to, cure the defects in her complaint.  The court therefore grants Kirk 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

---

[9]Kirk alleges that she was terminated after exercising her FMLA rights, but she does not specify when she was terminated or how much time passed between when she exercised her rights and when she was terminated.  Her complaint is therefore insufficient to enable the court to draw the reasonable inference that there is temporal proximity between her FMLA leave and her termination.

[10]In her response to ACH's motion to dismiss, Kirk suggests that she has pleaded both interference and retaliation under 29 U.S.C. 2615.  Because her complaint neither mentions nor alleges sufficient factual content to support an interference claim, *see* Compl. (ECF No. 1) ¶ 58, she may not add such an unpleaded claim through her response.

- 20 -

\* \* \*

For the reasons explained, the court denies ACH's motion to transfer the case to the Fort Worth Division, grants ACH's motion to dismiss, and grants Kirk 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

**SO ORDERED**.

August 22, 2025.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE